BLUE CROSS ASSOCIATION *et al.*, Plaintiffs-Appellants, *v.* 666 NORTH LAKE SHORE DRIVE ASSOCIATES, Defendant-Appellee.

First District (4th Division)    No. 81-1604

Opinion filed September 24, 1981.

Alan L. Unikel and Robert W. Biederman, both of Rosenberg, Savner and Unikel, and Elliott C. Bankendorf, of Blue Cross Association and Blue Shield Association, both of Chicago, for appellants.

Edwin A. Rothschild, Richard L. Fenton, and Jeanne M. Hayes, all of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:
Plaintiffs bring an interlocutory appeal from the denial of a prelim-

inary injunction. Plaintiffs filed the petition for a preliminary injunction seeking to preserve the ultimate issues in this case by enjoining defendant from making any penetrations into plaintiffs' leasehold for the purpose of installing plumbing, ventilation and electrical system risers.

Plaintiffs raised several issues for review which we will not reach because the sole role of an appellate court in addressing the grant or refusal of an interlocutory judgment is restricted to a determination of whether the trial judge correctly exercised his broad discretionary powers.

We reverse and remand for entry of the preliminary injunction.

On August 22, 1978, plaintiffs entered into a 5-year lease with a 5-year renewal option with American Mart Corporation for approximately 53,000 square feet of the 15th floor of the building located at 666 North Lake Shore Drive, Chicago. The lease stated that the premises were to be used for a computer installation and general office space.

Plaintiffs commenced to install the Plan-Net National Telecommunications System. The Plan-Net system was located in a computer envelope—a sealed environment with its own mechanical, electrical and telephone lines. Plaintiffs expended in excess of $2,000,000 in leasehold improvements and installed approximately $6,000,000 in computer equipment. Plan-Net was fully operational in August 1980.

In April 1979, defendant purchased the building from American Mart Corporation for the purpose of converting it to a mixed use residential, commercial and office facility. Defendant commenced interior demolition work in May 1979. In August 1979, defendant advised plaintiffs that the renovation program required alterations in plaintiffs' leasehold in the form of physical penetrations for installation of plumbing, ventilation and electrical risers to service condominium and office areas on floors above and below plaintiffs. Plaintiffs declined to relinquish any of the leased space and declined to permit penetrations through the leased space.

The parties had several meetings during the fall of 1979 to explore the nature and extent of the required penetrations. Meanwhile, plaintiffs leveled complaints that the demolition work adjacent to their premises substantially disrupted plaintiffs' personnel and computer operations. On December 7, 1979, plaintiffs filed a complaint seeking to enjoin defendant's demolition work and defendant's proposed penetrations into plaintiffs' leased space. Numerous motions were filed and orders entered during the pretrial period.

On April 21, 1981, the parties met for a pretrial conference. At the conference, the parties agreed that one of the ultimate issues in the case was whether the lease barred defendant from entering plaintiffs' premises to make repairs or alterations other than "any needful emergency repairs

or alterations."[1] Another issue was whether or not the entries, if permitted by the lease, could be made without substantially interfering with plaintiffs' right to quiet enjoyment of the leased premises.

After the conference, defendant notified plaintiffs that defendant intended to make plumbing and electrical penetrations within 30 days. Plaintiffs filed the instant motion for a preliminary injunction on April 29, 1981, claiming that the proposed penetrations violated paragraph 7 of the lease. Plaintiffs sought the order to have defendant cease work pending a trial on the merits.

The evidentiary hearing on the motion commenced on May 15, 1981. On June 22, 1981, the trial court denied plaintiffs' motion for a preliminary injunction. The court stated that plaintiffs had established the requisite irreparable injury, that plaintiffs' remedy at law was inadequate, and that the preliminary injunction could be so drawn as to maintain the status quo pending a trial on the merits. The court denied the injunction because plaintiffs had not established a clear legal right to prevent the penetrations because paragraph 7 of the lease was ambiguous. The ambiguity undermined plaintiffs' likelihood of success on the merits, and the harm to defendant from the grant of an injunction would exceed the benefit to plaintiffs. Plaintiffs appeal.

In *S & F Corp. v. American Express Co.* (1978), 60 Ill. App. 3d 824, 828, 377 N.E.2d 73, 76, we stated that for a preliminary injunction to issue, a plaintiff must establish that: (1) he possesses a certain and clearly ascertained right which needs protection (*Bromberg v. Whitler* (1977), 57 Ill. App. 3d 152, 372 N.E.2d 837); (2) plaintiff will suffer irreparable injury without the protection of the injunction (*Knuppel v. Adams* (1973), 12 Ill. App. 3d 708, 298 N.E.2d 767); (3) there is no adequate remedy at law for the injury (*La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 312 N.E.2d 252); and (4) plaintiff is likely to be successful on the merits (*McErlean v. Harvey Area Community Organization* (1972), 9 Ill. App. 3d 527, 292 N.E.2d 479).

■■ There are exceptions to the necessity of establishing probable success on the merits, however. (See *Alexander v. Standard Oil Co.* (1977), 53 Ill. App. 3d 690, 368 N.E.2d 1010; *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414.) If the subject of the injunction is property which

---

[1] Paragraph 7: "Access to Lessor: Lessee will allow lessor free access to the premises hereby leased for the purpose of exhibiting the same during the last 90 days of the term or to make any needful emergency repairs or alterations of said premises which said lessor may see fit to make, and there shall be no abatement of rent during such period of repairs or alterations."

Paragraph 42A: "Lessor covenants ° ° ° that, upon paying the rent and keeping the agreements of this lease on its part to be kept and performed, BCA and all persons and entities claiming through or under it shall at all times have peaceful and quiet possession of the premises and full enjoyment of all the rights herein granted for the term of the lease."

may be destroyed, or if, as here, the plaintiff seeks only to maintain the status quo until the ultimate issue is decided, the injunction is properly allowed or maintained even where there may be serious doubt as to the ultimate success of the complaint. *Alexander*, at 698; *Wessel*, at 690.

■■ The trial court stated that plaintiffs had established the requisite elements for issuance of a preliminary injunction. Yet, in denying the injunction, the court looked to an issue in dispute. We have held that it is not the purpose of a preliminary injunction to determine controverted rights or to decide the merits of a case. (*ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1978), 62 Ill. App. 3d 671, 682, 379 N.E.2d 1228, 1236.) The trial court further stated that a preliminary injunction could be drawn so as to preserve the status quo pending a trial on the merits. Nevertheless, the trial court balanced the equities and found that the harm to the defendant from granting the injunction would exceed the benefit to the plaintiffs. We have held that this doctrine is inapplicable where defendant's actions were done with full knowledge of the plaintiff's rights and with an understanding of the consequences which might ensue. *ABC Trans National Transport*, at 682; *Moore v. McDaniel* (1977), 48 Ill. App. 3d 152, 165-66, 362 N.E.2d 382, 393.

■■ Though this litigation has been protracted, defendant has been on notice since filing of the complaint in December 1979 that plaintiffs sought to protect the integrity of their leasehold interest. Plaintiffs have filed numerous motions seeking to halt interference with their computer operation. When the parties met at the pretrial conference, defendant did not indicate to the court that it intended to proceed despite the pending trial. Defendant served notice on plaintiffs after the conference, making it necessary that plaintiffs seek preliminary relief to maintain the status quo. Further, defendant proceeded to complete construction during the pendency of this appeal. And, prior to oral argument, defendant moved to dismiss this appeal on grounds of mootness because the penetrations into plaintiffs' leasehold were completed. The petition sought to enjoin any penetrations. And, future penetrations may be contemplated. We have held that after a suit for injunction has been filed and the court has acquired jurisdiction, if the defendant does any act which the complaint seeks to enjoin, he acts at his peril and subject to the power of the court to compel a restoration of the status quo ante, or to grant such other relief as may be proper under the circumstances. *Gribben v. Interstate Motor Freight System Co.* (1958), 18 Ill. App. 2d 96, 102-03, 151 N.E.2d 443, 447.

Finally, we turn to defendant's assertion that its acts did not breach the covenant of quiet enjoyment because plaintiffs were not actually or constructively evicted. We do not read the covenant of quiet enjoyment so narrowly. Defendant relies on *Brown v. Lober* (1979), 75 Ill. 2d 547, 553, 389 N.E.2d 1188, 1191, where the court stated that the covenant is

breached only when there is an actual or constructive eviction of the covenantee by the paramount holder of title. Moreover, the court stated that there must be a union of acts of disturbance and lawful title to constitute a breach. This case, however, is distinguishable from the case at bar because it involved an action by a grantee who subsequently learned that he had not purchased the subsurface mineral rights in his property. The case at bar presents acts by a lessor which interfere with the lessees' use and enjoyment of the premises.

■■ Breach of the covenant of quiet enjoyment in a leasehold may be found without finding that the lessor intended to deprive the lessee of possession. (See *Great Atlantic & Pacific Tea Co. v. La Salle National Bank* (1979), 77 Ill. App. 3d 478, 395 N.E.2d 1193.) A covenant of quiet enjoyment is implied in all lease agreements. (*64 East Walton, Inc. v. Chicago Title & Trust Co.* (1979), 69 Ill. App. 3d 635, 642, 387 N.E.2d 751, 755, citing *Berrington v. Casey* (1875), 78 Ill. 317; *Wade v. Halligan* (1855), 16 Ill. 507; *Russell v. Clark* (1912), 173 Ill. App. 461.) In *Great Atlantic & Pacific Tea Co. v. La Salle National Bank*, at 485, we defined a private nuisance in a leasehold situation as "an individual wrong arising from an unreasonable, unwarranted or unlawful use of one's property producing such material annoyance, inconvenience, discomfort, or hurt that the law will presume a consequent damage."

■■ Paragraph 42A of the lease expressly grants plaintiffs the right of quiet and peaceful possession and enjoyment. The meaning of this clause is not controverted. Plaintiffs had a right to seek injunctive relief for its breach when the conduct of defendant substantially interfered with plaintiffs' use and enjoyment of the premises.

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand for entry of the preliminary injunction.

Reversed and remanded.

ROMITI, P. J., and LINN, J., concur.